UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IRVIN W. McKAY

   PLAINTIFFS

v.

FAY SERVICING, LLC

   DEFENDANT

Case No. 1:21-cv-_____

**COMPLAINT**

**Request for Jury**

**I. JURIDICTION AND VENUE**

1. The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331and 28 U.S.C. § 1367, and 15 U.S.C. §§ 1692-1692k.

2. Venue is appropriate as the property the property which secured the mortgage loan at issue is located the Town of Kenduskeag in Penobscot County, Maine and Plaintiff is a resident of said Town of Kenduskeag, and Defendant committed the acts complained of within this district

**II. PARTIES**

3. Plaintiffs Irvin W. McKay is a resident of the Town of Kenduskeag County of Penobscot and State of Maine.

4. Irvin McKay has at all time occupied the property that is the subject of the Mortgage Loan identified below as his principal residence.

5. Defendant Fay Servicing LLC is a corporation organized and existing under the laws of the State of Delaware, registered to do business in the State of Maine

### III. FACTS REGARDING FAY

6. Fay is licensed as a debt collector to collect consumer debts in the State of Maine by the Maine Bureau of Consumer Credit Protection.

7. Fay regularly engages in the business of attempting to collect debts in the State of Maine.

8. Fay regularly engages in the business of enforcing mortgages securing debts and collecting such debts in the State of Maine.

9. Fay collects debts using the mails and telephone as instrumentalities of interstate commerce, and regularly engages in attempts to collect debts alleged by Fay to be due to others than itself.

10. Fay is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and the Maine FDCPA, 32 M.R.S. § 11002(6) & 11003(7)(C).

11. Fay is licensed as a mortgage servicer to conduct mortgage servicing activities in the State of Maine by the Maine Bureau of Consumer Credit Protection.

12. Fay is regularly engaged in receiving periodic payments from Maine homeowners pursuant to the terms of Maine mortgages, making or advancing payments to the owners or other 3rd parties with respect to Maine mortgage loans and evaluating Maine homeowners for loss mitigation or loss modification options and therefore is a mortgage servicer within the meaning of 14 M.R.S. § 6113.

13. Fay took over the servicing of the loan at issue in this case before July 13, 2020 at a time when the loan at issue was in default.

14. At all times, Fay has been servicing the loan at issue in the case on behalf of U.S. Bank Trust National Association as trustee of Citigroup Mortgage Loan Trust 2018-A.

15. Upon acquiring the servicing rights of the McKay Loan that is the subject of this action, Fay treated the loan that is the subject of this action as being in default.

### IV. THE MORTGAGE LOAN

16. McKay is a consumer who has lived in Kenduskeag, Maine at all times relevant to this Complaint.

17. On August 6, 2007, the Irvin McKay and his wife, Cindy McKay, entered into a mortgage loan with Equifirst Corporation in the amount of $118,500.00 (hereafter "the Mortgage Loan") with respect to which Irvin W. McKay signed the mortgage note (hereafter "the Note") and Irvin W. McKay and Cindy L. McKay signed the mortgage deed (hereafter "the Mortgage").

### V. THE LOAN MODIFICATION

18. Around December 1, 2018, the Irvin McKay could no longer afford their monthly payments on the Mortgage Loan and the loan went into default.

19. As of July 13, 2020, U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Trustee For The Citgroup Mortgage Loan Trust 2018-A (hereafter U.S. Bank Trust") was the owner of and party entitled to enforce the Note.

20. As of July 13, 2020, Fay was acting as servicer for U.S. Bank Trust with respect to the Mortgage Loan.

21. On July 13, 2020, Fay sent Irvin McKay a letter inviting him to make six trial payments (the "Trial Payment Plan" or "TPP") and telling him that if he made the six trial

payments, Fay would permanently modify his loan and reduce his monthly mortgage payments.

22. The TPP required McKay to make a single payment of $4,479.95 for the month of August 2020 and then five payments each in the amount of $936.59 for the months of September 2020 through January 2021.

23. McKay made the six trial payments on the TPP during the months in which they were due with the final payment made on or about January 13, 2021.

24. Fay sent to the Irvin and Cindy McKay a loan modification agreement dated January 15, 2021 (the "Loan Modification Agreement") for their execution in January 2021 and the McKays signed and promptly returned the agreement to Fay.

25. The Loan Modification Agreement called for the Irvin McKay to make monthly payments of principal and interest of $482.20 beginning on October 1, 2020 (during a time when he was still making their trial payment plan payments).

26. The Loan Modification Agreement provided that "As of November 1, 2020, the amount payable under the Note and Security Agreement is U.S. $100,000, consisting of the unpaid amount(s) loan to Borrower by Lender plus any interest and other amounts capitalized."

27. The Loan Modification Agreement did not list or state any other amounts due on the Mortgage Loan.

28. The McKays signed the Loan Modification Agreement on the understanding and condition that no other sums were owed on the Mortgage Loan other than the $100,000 stated balance plus accruing interest and amounts due for month escrows of tax and insurance payments.

29. After their final TPP payment of $936.59 made by McKay on or about January 13, 2020, McKay began in February 2021 to make monthly payments of $645.92 comprised of principal, interest and tax and insurance escrows pursuant to the Loan Modification Agreement.

30. In March 2021, Fay changed the monthly payment amount to $655.70 after changing the monthly escrow amount to $173.50.

31. For the months of March through August 2021, McKay has made monthly mortgage payments to Fay of $655.70 comprised of monthly principal and interest of $482.20 plus tax and insurance escrows of $173.50 in accordance with the Loan Modification Agreement.

## V.  THE BANK SUIT

32. On or about January 8, 2021, U.S. Bank Trust sued Irvin McKay in this court in Case No. 1:21-cv-00013 alleging that he was in default under the Note allegedly for failure to make the payment due on October 1, 2019 "and all subsequent payments" (the "Bank Suit").

33. In the Bank Suit, U.S. Bank Trust ignored the fact that Irvin McKay had already made five payments due under his trial payment plan to Fay acting as servicer for U.S. Bank Trust and that Fay had offered to permanently modify the Mortgage Loan if McKay made all six TPP payments.

34. In connection with the Bank Suit, its attorneys recorded in the Penobscot Registry of Deeds a false "Affidavit of Commencement of Foreclosure Pursuant to 14 M.R.S. § 6321" to which it attached a copy of the complaint in the Bank Suit, and in which affidavit the attorneys for U.S. Bank alleged that the complaint was a "foreclosure complaint with [sic] 14 M.R.S. §6321," even though the complaint in the Bank Suit does

not contain any claim for foreclosure and does not include any claims for relief under the Mortgage.

35. In the Bank Suit, McKay filed a counterclaim against U.S. Bank Trust, Fay and the law firm of Doonan, Graves & Longoria, LLC alleging abuse of process as to all counterclaim defendants, breach of the Maine servicer duty of good faith in 14 M.R.S. § 6113 by Fay, violation of the Maine Fair Debt Collection Practices Act by the law firm, and a cause of action for declaratory judgment.

36. U.S. Bank Trust dismissed the Complaint it had filed in the Bank Suit on March 10, 2021, but the McKay counterclaim remained pending.

## VI.  THE SETTLEMENT AGREEMENT

37. The McKay counterclaim was settled under the terms of a Settlement Agreement and Release of Claims finally dated May 21, 2021 (the "Settlement Agreement") pursuant to which U.S. Bank Trust and Caliber agreed to record a corrective document in the Penobscot Registry of Deeds correcting the false foreclosure affidavit and to pay $13,000 in damages to Irvin McKay and pay his legal fees of $8,500 in return for his dismissal of the counterclaim and acknowledgement of the validity of the assignment of the Mortgage by Equifirst Corporation.

38. The Settlement Agreement provided that "All provisions of the Note, Mortgage and Modifications…shall remain in full force."

39. The Settlement Agreement did not provide for the addition to McKay's obligations under the Note, Mortgage and the Loan Modification Agreement of any attorney fees, litigation costs or other charges of any description.

## VII. THE IMPROPER ACTIONS OF FAY

40. Notwithstanding the full and proper performance by McKay of the Trial Payment Plan and the monthly payments by McKay pursuant to the Loan Modification Agreement from and after February 2021, and notwithstanding the settlement of the McKay counterclaims:

    a. Fay sent to McKay a mortgage statement dated May 10, 2021, showing, in addition to his regular monthly payment amount of $655.70, a "Recoverable Corporate Advances Balance" due of $700 comprised of a "Foreclosure Attorney Fee" of $350 and a "Litigation Costs" item of $350.

    b. Fay sent to McKay a mortgage statement dated June 10, 2021, showing, in addition to his regular monthly payment amount of $655.70, a "Recoverable Corporate Advances Balance" due of $4,409.08 which included "Litigation Costs" items amounting to $3,300 and other wrongful charges.

    c. Fay sent to McKay a mortgage statement dated July 10, 2021, showing, in addition to his regular monthly payment amount of $655.70, a "Recoverable Corporate Advances Balance" owed of $2,600.00 comprised of unknown and unidentified amounts.

    d. Fay sent to McKay a Payoff statement dated August 3, 2021 showing a "Recoverable Corporate Advances" due of $2,600.00 in addition to principal and accrued interest.

41. The Bank Suit was filed without justification and while the Irvin McKay was performing his obligations under the TPP.

42. Any charges by U.S. Bank Trust and Fay to the McKay loan account of attorney fees, litigation costs or any other charges associated with the Bank Suit were unreasonable as the Bank Suit itself was unreasonable and not justified, and any such charges to the McKay loan account were not permitted by the Note, the Mortgage, the Loan Modification Agreement or the Settlement Agreement.

## COUNT I--FEDERAL FDCPA
## 15 U.S.C. §§ 1692 - 1692p.

43. McKay repeats the preceding allegations of of paragraphs 1-42 of the Complaint as if set forth fully in this Count I.

44. In connection with the May, June and July 2021 Mortgage Statements, Fay was attempting to collect a debt which it asserted to be owed to U.S. Bank National Association Trust as trustee for Citigroup Mortgage Loan Trust 2018-A.

45. In attempting to collect the debt relating to the McKay Loan which Fay asserted to be due to U.S. Bank Trust as trustee for the Citigroup Mortgage Loan Trust 2018-A, Fay used the mail system of the U.S. Postal Service.

46. Fay violated the provisions of 15 U.S.C. §§ 1692 - 1692p (the FDCPA). Fay's violations include, but are not limited to, the following:

    a. Fay violated 15 USC § 1692c sending directly to McKay the March through July 2021 Mortgage Statements when Fay had known at least since March 1, 2021 that McKay was represented by an attorney with respect to the Mortgage Loan and Fay had knowledge of, or could readily ascertain such attorney's name and address, and yet Fay communicated directly with Irvin McKay and not through his attorney.

8

    b. In sending the May, June and July 2021 Mortgage Statements, Fay violated 15 USC §1692d by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Irvin McKay in connection with the collection of the mortgage debt by delivering notices to seek payment of monies not owed by him and misrepresentation the status of the debt.

    c. In sending the May, June and July 2021 Mortgage Statements, Fay violated 15 USC §1692e by using false, deceptive, or misleading representations or means in connection with the collection of Irvin McKay's alleged mortgage debt by delivering the May, June and July 2021 Mortgage Statements seeking payment of monies not owed by him.

    d. In sending the May, June and July 2020 Mortgage Statements Fay violated 15 USC §1692e(2)(A) by falsely representing the character, amount or legal status of the alleged mortgage debt by delivering to McKay the May, June and July 2021 Mortgage Statements seeking payment of monies not owed.

    e. Fay violated 15 USC §1692f by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt by delivering the May, June, and July 2021 Mortgage Statement to McKay to seek payment of monies not owed.

47. Fay's acts as described above were done intentionally with the purpose of coercing McKay to pay more money than he owed on the alleged debt.

48. Fay's conduct described above constitutes a pattern and practice of violations of the FDCPA.

49. As a result of the sending by Fay of the May, June and July 2021 Mortgage Statements,

following all of the previous misconduct of Fay as enumerated above which was the subject of the McKay's previous counterclaim and the Settlement Agreement, McKay has been subjected to still additional emotional distress and to fears and doubts as to whether Fay will ever leave properly handle his loan account and stop trying to charge him for money that he does not owe, and whether it will continue to violate the statutes and laws created to protect him from such misconduct.

50. As a result of the conduct of Fay described above, McKay has been required to pay legal fees to his lawyer for efforts by his lawyer prior to the commencement of this suit to resolve the issues that are the subject of this complaint.

51. As a result of the above violations of the FDCPA, the Fay is liable to the McKay for declaratory judgment that Fay's conduct violated the FDCPA, and for McKay's actual damages, which include damages for emotional distress, statutory damages, costs and attorney's fees and for such other and further relief as may be just and proper.

**WHEREFORE**, Plaintiff Irvin W. McKay prays for an award of compensatory damages and attorney fees and for such other and further relief as the court shall deem appropriate and for his costs.

### COUNT II--MAINE FDCPA
### 32 M.R.S. §§ 11001 - 11054

52. McKay repeats and realleges and incorporates by reference all of the paragraphs above in this Count III.

53. Fay violated the provisions of 32 M.R.S. §§ 11001-11054 the Maine FDCPA, which violations include, but are not limited to the following:

   a. Fay violated 32 M.R.S. § 11012(1)(B) in the May, June and July 2021 Mortgage Statement sent to McKay in that at all times since March 1, 2021

      Fay knew that McKay was represented by an attorney with respect to the McKay Loan and had knowledge of, or could readily ascertain such attorney's name and address, and yet Fay communicated directly with McKay and not through his attorney.

  b. In sending the May, June and July 2021 Mortgage Statements, Fay violated 32 M.R.S.A. §11013(1) by engaging in conduct, the natural consequence of which was to harass, oppress or abuse McKay in connection with the collection of the mortgage debt by delivering notices to seek payment of monies not owed and misrepresenting the status of the debt.

  c. In sending the May, June and July 2021 Mortgage Statement, Fay violated 32 M.R.S.A. §11013(2) by using false, deceptive, or misleading representations or means in connection with the collection of McKay's mortgage debt by delivering notices to seek payment of monies not owed and misrepresenting the status of the debt.

  d. In sending the May, June and July 2021 Mortgage Statements, Fay violated 32 M.R.S.A. §11013(2)(B) by falsely representing the character, amount or legal status of the mortgage debt by delivering notices to seek payment of monies not owed and misrepresenting the status of the debt.

54. In sending the May, June and July 2021 Mortgage Statements, Fay violated 32 M.R.S.A. §11013(2)(B) by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt by delivering notices to McKay to seek payment of monies not owed and misrepresenting the status of the debt.

**WHEREFORE**, Plaintiff Irvin W. McKay prays for awards of compensatory damages and attorney fees and for such other and further relief as the court shall deem appropriate and for his costs.

### COUNT III—BREACH OF SERVICER DUTY OF GOOD FAITH
### 14 M.R.S. § 6113

55. McKay repeats and realleges and incorporates by reference all of the paragraphs above as if set forth fully in this Count III of the Complaint.

56. The conduct of Fay described herein constitute repeated failures by Fay to act in good faith toward McKay in the servicing of the McKay Loan in violation of the mandate of 14 M.R.S. § 6113(2) which required Fay to act in good faith in the servicing of the McKay Loan.

57. The conduct of Fay in violating the duty of good faith which it owed to McKay has resulted in actual damages to McKay including, without limitation, legal expense and emotional distress.

58. The conduct of Fay described above evidences a pattern and practice of Fay in violating its duty of good faith entitling McKay to recovery of statutory damages not exceeding $15,000.00.

59. The conduct of Fay in violating the duty of good faith which it owed to McKay entitles him to recover his legal fees in this action.

**WHEREFORE**, Plaintiff Irvin W. McKay prays for awards of compensatory damages, statutory damages and attorney fees and for such other and further relief as the court shall deem appropriate and for his costs.

## DEMAND FOR TRIAL BY JURY

In the filing of this Complaint, Irving W. McKay demand trial by jury on all of his claims against Fay.

DATED:  August 18, 2021

       /s/ Thomas A. Cox
Thomas A. Cox, Esq.,   Me. Bar No. 1248
Attorney for Plaintiff Irvin W. McKay

P.O. Box 1314
Portland, Maine 04104
(207) 749-6671
tac@gwi.net